McCord v. Gilbert.

---

## Ezra McCord et al. v. James H. Gilbert et al.

| 64 | 233 |
| 79 | 315 |
| 64 | 233 |
| 84 | 269 |
| 64 | 233 |
| 95 | ²317 |
| 64 | 233 |
| 97 | ¹628 |

1. SALES—*Change of Ownership and of Possession—Good Faith.*—A man in financial distress, who has sold out his business to one set of his creditors, is not required to abstain from making his living as an employe in connection with his former business, nor is the purchaser of his business required to exclude him from employment about it. Good faith in the transaction being required.

2. SAME—*Evidence of Change of Possession.*—The fact that a portion of the creditors of an insolvent person bought out his business and placed the word " Agent" after the name of the seller over the door, is sufficient to put persons upon inquiry as to such agent's right about the place.

Replevin.—Appeal from the Superior Court of Cook County; the Hon. WILLIAM G. EWING, Judge, presiding. Heard in this court at the March term, 1896. Reversed and remanded with directions. Opinion filed April 27, 1896.

FREDERICK W. PACKARD, attorney for appellants.

McGLASSON & BEITLER and D. H. PINNEY, attorneys for appellees.

MR. JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

This was an action of replevin brought by the appellants against the appellees, in which there was judgment for the appellees, and *retorno habendo* awarded.

On April 2, 1891, Alvin G. Kuhns gave a chattel mortgage to the appellants, Ezra McCord and William L. Goggin, covering the contents of a certain saloon in Chicago, consisting of liquors and saloon fixtures.

The mortgage was given to secure $6,000, of which $4,000 was payable to McCord and $2,000 to Goggin, according to Kuhns' promissory notes payable in ten months, with six per cent interest.

Some time between the giving of that mortgage and the thirteenth of the same month, McCord and Goggin took possession of the saloon and contents under said mortgage, and kept possession thereof under the mortgage, until on said April 13th, when Kuhns executed and delivered to them an absolute bill of sale of the same property, in consideration of $3,500 indorsed on his said mortgage notes.

On the same day of the execution of said bill of sale, Kuhns assigned to McCord and Goggin, with the written consent of the landlord, the lease he held of the saloon premises for a term expiring April 30, 1892, at the annual rental of $3,120, payable in monthly installments of $260, and the insurance policies were also transferred to them.

After that was done McCord and Goggin hired Kuhns at a salary to run the saloon for them, and also hired two other bar tenders and a porter, who seem to have been the same persons who had formerly worked for Kuhns.

To the name " Al. Kuhns," by which the place was known, there was added the word " Agent," where it appeared over the door, but no change was made in the name where it appeared on the window. The name of McCord & Goggin was not displayed anywhere about the saloon. McCord was a real estate dealer, handling his own property principally, and Goggin was and had long been in the bottled beer business. They do not appear to have been partners in any other business, but the effect of their relations in con-

nection with this business seems to be that of a partnership. They immediately opened a bank account in the firm name of McCord and Goggin, and Goggin went to the saloon every day and took the cash that had been received in the cash drawer or register, and deposited it to their account in bank. Goggin seems to have done the ordering of goods, etc., and to have paid the bills generally, although McCord appears to have sometimes signed checks, but all bills against the business seem to have been paid by the firm of McCord and Goggin, and usually by checks drawn by one or the other of them, with the exception of some small bar supplies for daily use, such as lemons, which Kuhns sometimes bought and paid for out of cash taken in. Kuhns, however, never paid any other bills.

It also appears that about the time McCord and Goggin opened the business, they contributed to their bank account funds of their own, derived from entirely independent sources, as capital for running the business.

In November, 1891, McCord and Goggin took a new lease from the landlord of the premises for a further term of three years from the time of the expiration, on April 30, 1892, of the lease that was assigned to them by Kuhns, at a rental of $4,000 per annum, and, although the trial court refused to admit offered evidence of the payment by them of the rent that had accrued under either or both of the leases, it is a reasonable presumption, from the fact of their continued occupation of the premises, that they did pay all such rent.

After the new lease had been obtained, McCord and Goggin, in or about the spring of 1892, sold substantially all the old fixtures and furnishings to one Preston, and received the pay therefor, and procured new ones in place of the old, to be made and set up for them, by the Brunswick-Balke-Collender Company, at a cost of $3,200, paid by McCord and Goggin.

Other additions and substitutions, both of fixtures, furniture and stock, were made and paid for by McCord and Goggin, so that at the time of the execution levy in question,

there remained on or about the premises only a chandelier, four gas brackets, and perhaps a small amount of liquor, that was there when McCord and Goggin took possession of the place.

Under these circumstances and conditions, McCord and Goggin remained in possession of the saloon and conducted the business down to the time of the levy of the execution writ in question.

At the time the mortgage and transfer referred to were made, Kuhns was indebted to the appellee, McNeil and Higgins Company, for goods delivered by that corporation to him in the preceding January, and for that indebtedness a judgment for $437.25 was recovered in June, 1892. Upon such judgment an execution was issued, and on September 2, 1892, levied on fixtures and goods so in possession of McCord and Goggin, and all of which, with immaterial exceptions, had been bought and paid for by McCord and Goggin.

Thereupon, this suit in replevin was brought by McCord and Goggin, and judgment having been rendered against them upon a trial before the court, without a jury, and a *retorno habendo* awarded, the case is brought here by appeal for review.

The facts can scarcely be said to be in dispute. But it is insisted by the appellees that, as the trial court doubtless held, there was no change of possession from Kuhns to the appellants, McCord and Goggin, and that in law the transfer was fraudulent as to the appellees, who were existing creditors of Kuhns.

There can be no question from the record of the *bona fide* character of the indebtedness by Kuhns to McCord and Goggin. It was not questioned on the trial below, and is not questioned here. And it is just as certain from the evidence, that, as between Kuhns and McCord and Goggin, the transfer was a *bona fide* one, and that by it all interest which Kuhns had in the saloon and its contents passed, as between the parties, to McCord and Goggin. The mere circumstance that Kuhns testified that he supposed that if he could get

the money to-morrow to pay up what he owed to McCord and Goggin he could get the place back again, should not prevail over all the other evidence in the case. He testified also, that there was no agreement to that effect, and that his only remaining interest in the place was to obtain a salary until he could do better elsewhere. Such a hope, or supposition, is one that every debtor who has lost his business is quite likely to indulge in, and from the circumstance that after the consideration of the sale was credited upon his notes he was left indebted to McCord and Goggin in the sum of $2,500, it is not unlikely that McCord and Goggin, as business men, would gratify his supposition in that regard.

It is not in every case where the vendor is engaged to run a business sold out by him that the sale is fraudulent as to other creditors. A man in financial distress, who has sold out his business to one set of creditors, is not required to abstain from making his living as an employe in connection with his former business, nor is the purchaser of his business required to exclude him from employment about it. Good faith in such matters is absolutely required, and what will amount to notice of the change in ownership is essential. The good faith was abundantly established, and is hardly questioned, but it is insisted that the open and visible evidence of delivery and possession which the law requires, did not take place.

We do not think the retaining of the name "Al. Kuhns" on the window should prevail against the other evidence of change of possession. Although we do not find it so testified to, yet we may reasonably know that a drinking saloon acquires a reputation from the name that is attached to it, which is of value to it as a resort, and which continues to cling to the saloon long after many changes in ownership occur; and we do not think that McCord and Goggin were required to destroy that value by removing the name. It was rather indicative of the place than of ownership. Kuhns had long been engaged in the saloon business at that location, and in a large city the name of a resort, whether it be

of a saloon or a theatre, carries with it a reputation attractive to strangers as well as acquaintances, which is often of great value entirely independent of the mere fact of proprietorship.

Unless, therefore, the retention of Kuhns in the employ of the vendee made the sale a fraudulent one, which, under the circumstances, we do not think it did, the levy was wrongly made. To any person who had occasion to investigate, his name over the door with the word " agent" appended, would indicate enough to put such a person upon inquiry as to his rights about the place.

Furthermore, as to appellees, they must have known, from the fact that their bill had remained unpaid, that Kuhns was not prospering, and when they saw the expensive changes that were made by McCord and Goggin in all the fixtures and fittings of the saloon, it was reasonable notice to them of the change of ownership that had occurred, even though they did not have other actual notice concerning which there was some evidence that they did have.

We do not regard this as a case of leaving the possession of the goods in the vendor, and therefore one falling within the rule that has prevailed in this State ever since the case of Thornton v. Davenport, 1 Scam. 296, that all sales of chattels where possession is permitted to remain with the vendor are fraudulent *per se*, and void as to creditors and subsequent purchasers, " unless the retaining of possession be consistent with the deed," or bill of sale.

We regard the evidence as establishing clearly every element necessary to a change of possession, except the single fact that Kuhns was employed to assist in running the business, and in his hired capacity did continue to attend bar in the saloon. The evidence shows that he exercised no other capacity or authority about the place, and had none other. McCord and Goggin were not required to place their own names upon the saloon signs. We are aware of no law that requires a business man to do that.

We consider that every essential of good faith and actual

change of possession that the law requires, was done, and that the execution levy upon the property, as being in law that of Kuhns, was wrongful.

Furthermore, the property levied upon never belonged to Kuhns, with but trifling exceptions, if any, but was property that McCord and Goggin had bought and paid for with their own funds, and it would be grossly unjust to deprive them of it under the proved facts and circumstances.

We can not concur with the learned trial judge in the conclusion reached by him, and must reverse the judgment and remand the cause, with directions to the Superior Court to give judgment for the appellants. Reversed and remanded, with directions.

MR. JUSTICE GARY does not participate.